**Arthur W. STIGILE and Ellen Balis, Plaintiffs,**

**v.**

**President William Jefferson CLINTON and John B. Arthur, Associate Director for Administration, Office of Management and Budget, Executive Office of the President, Defendants.**

**Civil Action No. 96–01328 (CRR).**

United States District Court, District of Columbia.

July 24, 1996.

Benjamin S. Boyd and Richard J. Vacura, Attorneys, Piper & Marbury, L.L.P., Washington, D.C., and Arthur B. Spitzer, Attorney, American Civil Liberties Union Fund of the National Capital Area, Washington, D.C., for Plaintiffs.

Susan K. Rudy and Jeffrey S. Markowitz, Attorneys, Civil Division, U.S. Department of Justice, Washington, D.C., with whom Frank Hunger, Assistant Attorney General, and Eric H. Holder, Jr., U.S. Attorney, appeared on the briefs, for Defendants.

## MEMORANDUM OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHARLES R. RICHEY, District Judge.

The two plaintiffs are long-time career Economists with the Office of Management

and Budget, Executive Office of the President (EOP). Their offices are located in the New Executive Office Building on Lafayette Square in Washington, D.C., but they hold passes to the Old Executive Office Building (OEOB) so as to enable them to see their supervisors. Pursuant to the EOP's drug testing plan promulgated pursuant to Executive Order 12,564, 51 Fed.Reg. 32,889 (Sept. 17, 1986), the plaintiffs are subject to random drug testing because they hold regular passes to the OEOB. On June 12, 1996, plaintiff Stigile was randomly selected for drug testing. Although in a "testing-designated position," plaintiff Balis has not yet been randomly selected for testing.

The government contends that the drug testing of the plaintiffs is necessary to ensure the safety and security of the President and Vice President. The question presented is whether, under the facts in this case, the plaintiffs have a Fourth Amendment right to refuse to submit themselves to a random drug test.[1]

On July 10, 1996, with the consent of the defendants and pursuant to Rule 65(e) of the Federal Rules of Civil Procedure, the Court held a combined hearing on the plaintiffs' motion for a preliminary injunction and the merits of the plaintiffs' Complaint. After consideration of all the evidence presented in this case, the Court makes the following factual findings and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. The plaintiffs hold regular passes to the OEOB which provide them with 24 hour access to common areas of that building as well as to picnic grounds outside of the building.

2. There is no evidence in this case that OEOB passholders are more likely to use drugs than not, nor is there any evidence of a drug abuse problem by OEOB passholders.

3. The plaintiffs are subject to random drug testing under the EOP's program *solely* because the plaintiffs hold regular passes to the OEOB.

4. The government has not submitted any evidence, only argument, that employees who use illicit drugs are susceptible to blackmail or pose a safety hazard to fellow workers in a white collar office environment. However, based on the Supreme Court's holding in *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 664, 109 S.Ct. 1384, 1389–90, 103 L.Ed.2d 685 (1989), the Court finds that employees who use drugs, either on or off-duty, are susceptible to blackmail.

5. It is undisputed that the plaintiffs do not have a security clearance or access to classified documents, nor do they hold passes to the White House.

6. Certain common areas, or "vantage points", of the OEOB and the picnic grounds outside the building have views of the West Wing of the White House and the surrounding White House grounds. However, the facts belie the government's allegation that the plaintiffs' access to the aforementioned "vantage points" at the OEOB and the picnic area provides the plaintiffs and their guests with "sensitive" or secret information regarding the OEOB, the White House grounds, and the comings and goings of the President and Vice President:

a. A number of other federal buildings on Lafayette Square in Washington, D.C. also have views of the West Wing of the White House and the surrounding grounds;

b. Approximately 600 interns and a number of other individuals not subject to drug testing, including federal employees, contractors, and private sector maintenance personnel, have access to the same common areas of the OEOB as regular OEOB passholders. Many of these non-regular OEOB passholders have sufficient access to the vantage points to make the same observations about the OEOB, the White House grounds, and the comings and goings of the President and

---

1. In addition to their claim brought pursuant to the Fourth Amendment, the plaintiffs' assert in their Complaint claims under the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Because the parties did not brief or argue this matter, and because the Court shall enjoin the testing of the plaintiffs pursuant to the Fourth Amendment, the Court will not address these additional claims.

Vice President as do regular OEOB passholders;

c. The domestic and foreign press have access to the White House Press Room which is located on the north side of the West Wing of the White House, is closer to the West Wing and Oval Office than the OEOB, and has a view of the White House grounds.

d. There is no evidence that individuals entering the OEOB, including regular passholders, visitors, and others, are asked by the Secret Service to keep secret any information they observe from vantage points in the OEOB.

7. Based on the following facts, OEOB passholders and their guests do not have unique or special access to the President or Vice President such that the regular passholders or their guests pose a physical threat to the President or Vice President that is greater than the general risk the President or Vice President faces within and outside the OEOB when confronted with individuals not subject to random drug testing:

a. The entrance to the Vice President's office at the OEOB is manned by a Secret Service Agent, is always locked while the Vice President is in his office, and is restricted;

b. Although the President and Vice President visit the OEOB often, and although the President and Vice President may stroll the White House grounds, they are accompanied by their ever present Secret Service detail during said visits or strolls;

c. All entrants to the OEOB, regardless of passholder status, must pass through a magnetometer, pass their bags through an x-ray machine, and are subject to search by Secret Service agents;

d. Attendance at any event in the OEOB involving the President or Vice President requires a special invitation.

## CONCLUSIONS OF LAW

1. The Fourth Amendment prohibits the government from conducting unreasonable searches. U.S. Const. amend. IV.

■ 2. A random drug test is a search within the meaning of the Fourth Amendment. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989).

■ 3. The reasonableness of a search, in the context of a random drug test not for the purpose of law enforcement, " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.' " *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 616–18, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989).

4. The Supreme Court and the Court of Appeals for the District of Columbia Circuit have found a strong governmental interest under the following circumstances, ***none of which are present in the case at bar*** : when an employee carries a firearm, *see National Fed'n of Federal Employees v. Cheney*, 884 F.2d 603, 612–13 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990); when an employee is engaged in a safety sensitive occupation such as the operation of a train, *see Skinner*, 489 U.S. at 628, 109 S.Ct. at 1419; when an employee has access to classified or sensitive information, *see Von Raab*, 489 U.S. at 677, 109 S.Ct. at 1396–97; *National Treasury Employees Union v. United States Customs Serv.*, 27 F.3d 623, 629 (D.C.Cir.1994) (*NTEU* ); *Hartness v. Bush*, 919 F.2d 170, 173–74 (D.C.Cir.), *cert. denied*, 501 U.S. 1251, 111 S.Ct. 2890, 115 L.Ed.2d 1055 (1991); and when testing of high school athletes "was undertaken in furtherance of the government's responsibilities, under a public school system, as guardian and tutor of children entrusted to its care," *Vernonia School Dist. v. Acton*, —— U.S. ——, ——, 115 S.Ct. 2386, 2396, 132 L.Ed.2d 564 (1995).

■ 5. A background investigation of a federal employee may lower, but does not eliminate, that employee's expectation of privacy regarding his or her bodily fluids, absent other intrusions (such as required medical examinations) not present in this case which may further diminish expectations of privacy. *Cf. NTEU*, 27 F.3d at 629.

■ 6. The governmental interest in protecting the President and Vice President, while laudatory and essential, is not credible

under the facts of this case. There is no evidence that the plaintiffs or their guests have access to "sensitive" information or that they have unique or special access to the President or Vice President such that the plaintiffs or their guests pose a physical threat to the President or Vice President. Accordingly, since the government does not have a legitimate interest in drug testing the plaintiffs, the government has no interest to tip the Constitutional scales in favor of drug testing as applied to the particular facts of this case.

7. In addition, while this Court abhors the sale, use, or distribution of drugs, it will not suspend the Constitution and the rights thereunto appertaining to federal employees when the government has not presented evidence implicating the types of circumstances set forth in ¶ 4 of this Court's conclusions of law. While it may be that the government's program with respect to regular OEOB passholders may need revision, what revision is precisely needed is for another day and another case. The Secret Service, responsible for the safety of the President and Vice President and not a party to this case, and good lawyers can obviously deal with any exigencies that may exist regarding the security of the leaders of our Country, which, as the Court has already said, is essential for them and the general welfare of this Republic.